IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REGINALD VANCE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 08- 1283 (PLF) |
| | ) |
| DIRK KEMPTHORNE, SECRETARY | ) |
| DEPARTMENT OF THE INTERIOR | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**

Defendant, DIRK KEMPTHORNE ("Defendant"), Secretary, U.S. Department of Interior

(DOI) by his undersigned attorneys, hereby submits the following memorandum of points and

authorities in opposition to Plaintiff Reginald Vance's Emergency Motion for Temporary

Restraining Order and Preliminary Injunction ("Motion"). Plaintiff's Motion requests that the

Court enjoin the DOI from enforcing its decision to terminate his employment. For the reasons

detailed below, Plaintiff's Motion should be denied.

**PRELIMINARY INJUNCTION**

Plaintiff has filed a complaint alleging breach of contract, a due process violation under

the Fifth Amendment and a violation of Title VII. Plaintiff moves for a temporary restraining

and preliminary injunction requesting an order, inter alia, to restrain "the Defendant from

removing plaintiff from his position as Supervisory Management and Budget Analyst, GS-14," to

permit Plaintiff "to return to work pending the outcome of this matter, " and to cease and desist

all discriminatory and retaliatory employment actions being taken against [Plaintiff]." *See*

Motion at 1-2.   For a number of reasons, Plaintiff's Motion for a preliminary injunction is utterly without merit.

*First*, Plaintiff has not shown a likelihood of success on the merits of his claims.   Indeed, Plaintiff's claims are ripe for a threshold dispositive motion because Plaintiff has not exhausted his administrative remedies.   Nor is any breach of contract claim appropriately before this Court.

*Second*, Plaintiff has not shown any irreparable harm that he will suffer in the absence of preliminary injunction.   (To the extent that the TRO portion of the motion required the Defendant to not remove Plaintiff from his position, that removal has already occurred as of July 25, 2008, and is currently moot.)  With regard to reinstatement, any remedial action with regard to that issue would be appropriately resolved with back pay, restoration of his position and/or other money damages if appropriate.   Accordingly, Plaintiff has failed to show irreparable harm.

*Lastly*, forcing Defendant to retain an employee whose misconduct directly related to the fundamentals of his position is not in the public's interest, and in fact, harms the public.   The DOI cannot trust plaintiff to execute his responsibilities with regard to enforcing the regulations for use of government credit cards when the plaintiff's own actions show a marked disregard for those regulations.

For these reasons, which are explained in more detail below, Plaintiff's Motion should be denied.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, an African-American, has been employed as a GS-14 Supervisory Management and Budget Analyst and Chief of the Business and Finance Office at the National Park Service. Compl. at 2.  In April 2007, plaintiff and defendant reached a settlement of a discrimination

complaint filed by plaintiff by adoption of a "Resolution Agreement." Id. at 2; Pltf's Motion, Exhibit B.

On April 21, 2008, plaintiff was informed that the Deputy Chief Information Officer intended to remove him from his position because an audit found plaintiff mis-used his government issued credit card. Exhibit A. That letter informed plaintiff that he may respond orally and in writing within ten days of the April 21, 2008, letter. Id., at 9. By letter of May 5, 2008, plaintiff requested a ten day enlargement of time "for [his] **written** response. . .." Exhibit B (emphasis added). This request was readily granted. Exhibit C. Plaintiff met with Joseph Curran, the Chief Information Officer, on May 6, 2008, and reiterated the need for time to file his written response. Exhibit D. Subsequently, plaintiff, through counsel, submitted a lengthy written response to the proposed removal. Pltf's Exhibit C (letter of May 16, 2008). Finally, plaintiff offered his availability for an oral reply "to provide any information that may be required for further clarification." Exhibit E (email from plaintiff to Joseph Curran, dated May 16, 2008).

On July 22, 2008, plaintiff received the final Decision on Proposed Removal informing him of his removal as of July 25, 2008. Pltf's Exhibit C. On July 25, 2008, plaintiff filed this action.

## ARGUMENT

## I.      THE STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF IS STRINGENT.

The standard for obtaining a preliminary injunction is a difficult one to fulfill. To obtain injunctive relief, Plaintiff must show (a) a substantial likelihood of success on the merits; (b) that he would suffer irreparable harm absent an injunction; (c) that issuing an injunction would not significantly harm the Defendant or other parties; and (d) that the public interest will be furthered

by the injunction. *See Howard v. Evans*, 193 F. Supp. 2d 221, 226-27 (D.D.C. 2002) (denying

plaintiff's attempt to obtain a preliminary injunction), *citing Mova Pharm. Corp. v. Shalala*, 140

F.3d 1060, 1066 (D.C. Cir. 1998). Moreover, preliminary injunctions are extraordinary forms of

judicial relief, and courts should only grant them sparingly. *Howard v. Evans*, 193 F. Supp. 2d at

227, *citing Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976).

In applying the aforementioned four-part test, a court may balance the strengths of each

factor. *Id.* But it is critical that Plaintiff show a substantial likelihood of success on the merits.

*Howard v. Evans*, 193 F. Supp. 2d at 227 ("It is particularly important for the movant to

demonstrate a substantial likelihood of success on the merits. Indeed, absent a "substantial

indication" of likely success on the merits, "there would be no justification for the court's

intrusion into the ordinary processes of administration and judicial review.") (internal citations

omitted), *quoting Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F.Supp.2d 114, 140

(D.D.C. 1999) (internal quotations omitted). Moreover, if Plaintiff fails to show irreparable

injury, the Court may dispense with the Motion without further consideration of any other factor.

*Howard v. Evans*, 193 F. Supp. 2d at 227 ("if a party makes no showing of irreparable injury, the

court may deny the motion for injunctive relief without considering the other factors"). As

demonstrated below, Plaintiff cannot prove substantial likelihood of success, irreparable harm, or

that public interests will be furthered. Thus, his request for injunctive relief must be denied.

## II.    PLAINTIFF CANNOT SHOW A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF HIS CLAIMS BECAUSE HE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AND A BREACH OF CONTRACT CASE IS NOT PROPERLY BEFORE THIS COURT.

Plaintiff has not exhausted his administrative remedies regarding the claims alleged in his

Complaint, nor is a breach of contract claim properly before this Court. Because of these defects, plaintiff cannot show any, let alone a substantial, likelihood of success on the merits of his claims for purposes of this Motion.

Under Title VII, an employee of the federal government, such as Plaintiff, may raise claims of employment discrimination in federal court only after he has exhausted certain administrative remedies. 42 U.S.C. § 2000e *et. seq*; 29 C.F.R. § 1614.407. In order to initiate the administrative process, an employee must contact an EEO counselor within 45 days of the alleged discriminatory act; and after a final interview with the counselor, may file a formal administrative complaint within 15 days after receiving a right to file notice. 29 C.F.R. §§ 1614.105-106. Once a formal administrative complaint has been filed, the agency has 180 days from the date of the last amendment to the formal complaint to investigate the issues raised in the complaint. *See* 42 §2000e-16(c); 29 C.F.R. § 1614.407(b). Only after 180 days have lapsed, or after the agency issues a final decision (whichever is earlier), may the employee pursue his or her claims in federal court. *Id.* A complaint brought in federal court before such time is subject to dismissal. *Id.*

A court will deny a motion for a preliminary injunction and dismiss an action when Plaintiff's claims have not been properly exhausted. Indeed, in *Howard v. Guterrez*, Civ. No. 08-0421 (PLF) (April 16, 2008) Slip Op. attached, in which a temporary restraining order was sought by an employee of the Department of Commerce, this Court noted that cases which feature an undisputed failure to exhaust administrative requirements for a Title VII claim are "routinely dismissed." Id. Slip Op. at 5.

Certainly, "[t]he [exhaustion] requirement is 'not a mere technicality;' rather, the D.C.

Circuit has clearly admonished that a district court should not 'allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process.'"

*Howard v. Evans*, 193 F. Supp. 2d at 198, *quoting Park v. Howard Univ.*, 71 F.3d 904, 907-09 (D.C. Cir. 1995).

With regard to plaintiff's claim of a violation of due process, not only was plaintiff given all the process that was due, such claims must be pursued under the Civil Service Reform Act (CRSA), Pub.L. No. 95-454, 92 Stat. 1111, codified in various places in Title 5 of the U.S. Code, by the filing of a grievance with the Merit Systems Protection Board (MSPB). The CSRA

> "comprehensively overhauled the civil service system . . . creating an elaborate 'new framework for evaluating adverse personnel actions against [federal employees].' It prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." U.S. v. Fausto, 484 U.S. 439, 443 (1988) (citations omitted). The CSRA remedial scheme is the "comprehensive system for reviewing personnel action taken against federal employees." Id. at 455.

*Kleiman v. U.S. Department of Energy*, 742 F. Supp. 697, 698-99 (D.D.C. 1990). "The types of personnel actions covered by the Act and the review available can be divided into three categories: (1) for major personnel actions specified in the statute ("adverse actions"), direct judicial review [before the Federal Circuit Court of Appeals] after extensive prior administrative proceedings; (2) for specified minor personnel actions infected by particularly heinous motivations or disregard of law ("prohibited personnel practices"), review by the Office of Special Counsel ("OSC"), with judicial scrutiny [by the Federal Circuit Court of Appeals]" limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry;" (3) for the specified minor personnel actions not so infected, and for all other

minor personnel actions, review by neither OSC nor the courts." *Kleiman*, 742 F. Supp. at 99,

n.2 (citing *Carducci v. Regan*, 714 F.2d 171, 175 (D.C. Cir. 1983) (citations omitted)). The

Supreme Court has described this framework as "an integrated scheme of administrative and

judicial review, designed to balance the legitimate interests of the various categories of federal

employees with the needs of sound and efficient administration." *United States v. Fausto*, 484

U.S. 439, 445 (1988). The plain language of the CSRA requires plaintiffs to present their claims

first to the Office of Special Counsel and, then, if they remain dissatisfied, to the Merit Systems

Protection Board prior to any judicial review.

In *Convertino v. U.S. Department of Justice*, 393 F. Supp. 2d 42 (D.D.C. 2005) (RCL),

the Court faced similar issues where the employee was basing his action at least in part on the

First Amendment. The Court found that failure to comply with the exhaustion requirements of

CSRA applied to all of plaintiff's claims, including his constitutional claim under the First

Amendment. The Court specifically noted:

> The D.C. Circuit has found that the public interest in upholding the structure
> created by Congress for addressing personnel-related matters is so strong that
> federal employees "may not circumvent that structure even if their claim is based
> . . . on the Constitution." Steadman, 918 F. 2d at 967. Thus, for constitutional
> claims seeking equitable relief, as for other types of claims, "exhaustion of
> [CSRA] remedies is a jurisdictional prerequisite to suit." (Citations omitted).

*Id.* at 47. Plaintiff in this case does not allege that he filed a grievance before the MSPB or

initiated a Title VII claim (although we understand he contacted a counselor within the last

several days).

Applying these exhaustion requirements under Title VII and the CRSA to Plaintiff's

claims, therefore, it is clear that Plaintiff's Complaint is ripe for dismissal, and thus, Plaintiff

cannot show a substantial likelihood of success on the merits.

Moreover, to the extent plaintiff raises a breach of contract claim, such a claim should be heard in the Court of Federal Claims.   This Court lacks subject matter jurisdiction over the Breach of Contract claim under the Tucker Act, 28 U.S.C. § 1491(a)(1).[1] The courts routinely treat administrative settlements of discrimination claims as contracts. *See, e.g., Saksenasingh* v. *Secretary of Education*, 126 F.3d 347, 348-49 (D.C. Cir. 1997); *Bowden v. United States*, 106 F.3d 433, 436 (D.C. Cir. 1997). The D.C. Circuit has held that actions for breach of such contracts belong in the Court of Federal Claims where the amount sought exceeds $10,000. Although plaintiff here only requests $10,000 as damages, his request for reinstatement and continued employment would drastically increase the amount under consideration. *See Brown* v. *United States of America*, 389 F.3d 1296, 1297 (D.C. Cir. 2004) (affirming dismissal of claim alleging breach of administrative settlement of EEO charges "because this contract question arises in a suit against the United States for more than $10,000 in damages, jurisdiction to decide whether the Department breached the settlement agreement lies exclusively in the Court of Federal Claims.").

## III.   PLAINTIFF CANNOT SHOW IRREPARABLE INJURY.

Plaintiff also cannot show irreparable injury.  Where government personnel matters are at issue, courts reserve injunctive relief for extraordinary circumstances. *Sampson v. Murray*, 415 U.S. 61 (1974); *Wagner v. Taylor*, 836 F.2d 566, 757 n.66 (D.C. Cir. 1987).  This higher standard for government personnel matters acknowledges both the wide latitude afforded the

---

[1] Plaintiff has not cited the Tucker Act, or any statutory provision to support jurisdiction of a contract claim in support of the Court's jurisdiction.  This, in itself, could be fatal to such a claim.  See Fed. R. Civ. P. 8(a)(1).

government in conducting its internal affairs and the historical unwillingness to grant equitable relief in employment cases. *See Sampson*, 415 U.S. at 83.

Although *Sampson* established a heightened standard for injunctive relief, the Court did not explicitly define what "extraordinary circumstances" required. Instead, the Court explained that the employee seeking injunction needs to, "at the very least . . . make a showing of irreparable injury sufficient in kind and degree to override the[] factors cutting against the general availability of injunctions in Government personnel cases." *Id.* at 84. Notably, insufficient savings or difficulty finding reemployment "will not support a finding of irreparable injury, however severely they may affect a particular individual" as those injuries are "common to most discharged employees and [are] not attributable to any unusual actions relating to the discharge itself." *Id.* at 92 n. 68.

This District Court has applied *Sampson*'s higher standard for injunctive relief in Title VII cases brought by federal employees. *See e.g., Farris v. Rice*, 453 F. Supp. 2d 76, 79-80 (D.D.C. 2006) (Urbina, J.). In such cases, the courts have recognized that a plaintiff seeking injunctive relief in a Title VII action against the federal government must make "a more stringent showing of irreparable injury". *Bonds v. Heyman*, 950 F. Supp. 1202, 112 (D.D.C. 1997), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

Here, Plaintiff cannot satisfy either the stringent *Sampson* standard or even the lesser, traditional standard of irreparable injury. The D.C. Circuit has defined the traditional standard of irreparable injury as "both certain and great . . . actual and not theoretical." *See Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). To prevail, the party requesting relief must

show that "the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.*, quoting *Ashland Oil, Inc. v. FTC*, 409 F. Supp. 297, 307 (D.D.C. 1976) (citations and internal quotations omitted). Finally, mere "allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur". *Id.* (emphasis in original).

The injuries which Plaintiff cites are temporary, economic damages which are recoverable during the ordinary course of Title VII litigation.[33] *Sampson*, 415 U.S. at 90 ("mere injuries, however substantial in terms of money . . .are not enough" to show irreparable harm). As such, it is well established that these types of economic injuries do not constitute irreparable harm. *Id.* ("temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury") (citation omitted). Indeed, "[t]he key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Nichols*, 18 F. Supp 2d at 4.

In a recent similar case, this Court noted that "'given the court's equitable powers [in an

---

[33]

In weighing "irreparable harm," the *Sampson* Court cited the legislative history of the Back Pay Act and concluded that the availability of back-pay to terminated government employees weighed against the existence of irreparable harm: "an agency or department of the Government may remove any employee at any time, but [] the employee shall then have a right of appeal. When he is removed, he is of course off the pay roll. If he wins the appeal, it is provided that he shall be paid for the time during which he was suspended." *Sampson*, 415 U.S. at 90 (citation omitted). Although *Sampson*'s citation was to the Back Pay Act, Title VII allows not only a back-pay remedy, but also compensatory damages and attorney fees should the Title VII plaintiff prevail. This remedy is also available under the CRSA upon a finding by the MSPB that plaintiff should be reinstated.

employment discrimination case] to remedy for loss in employment through, for example, back pay and time in service credit, cases are legion holding that loss of employment does not constitute irreparable injury.'" *Howard* Slip Op. at 5, citing *Farris v. Rice*, 453 F. Supp. 2d at , 79.

Finally, with regard to the breach of the Resolution Agreement, plaintiff has made no showing that any remedy he would receive after resolution on the merits would not be sufficient to address his injuries. In other words, nothing about litigation over a contract, and particularly this contract, will result in irreparable harm to plaintiff if litigated through the normal course of an action.

Given the above, Plaintiff cannot show that without the requested injunctive relief, he would suffer irreparable harm. Therefore, Plaintiff's request for such injunctive relief should be denied.

## IV.    GRANTING PLAINTIFF INJUNCTIVE RELIEF WOULD HARM DEFENDANT AND SERVE NO PUBLIC INTEREST.

In *Sampson*, the Court stressed the importance of granting the government "the widest possible latitude in the dispatch of its own affairs." *Sampson*, 415 U.S. at 83. If Plaintiff's request for injunctive relief were granted, the Defendant's ability to make the most fundamental personnel decisions in dispatching its affairs would cease. Moreover, if Plaintiff were successful on this Motion, Defendant would be compelled to retain Plaintiff, who has underperformed, in a position with national security implications. Not only would this result not serve a public interest, it could potentially harm the public. For all of these reasons, Plaintiff should not be awarded injunctive relief.

## CONCLUSION

Based on the foregoing, the Court should deny Plaintiff's request for a preliminary injunction. A proposed order is attached.

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar # 434122
Civil Chief

LAURIE WEINSTEIN, D.C. Bar # 389511
Assistant United States Attorneys
555 Fourth Street, NW, E 4820
Washington, DC 20530
Telephone: (202)514-7133

OF COUNSEL

KERRY CREIGHTON
United States Department of Interior

12



# United States Department of the Interior

**NATIONAL PARK SERVICE**
1849 C Street, N.W.
Washington, D.C. 20240

IN REPLY REFER TO:
P36(2420)

APR 2 1 2008

Memorandum

To:      Reginald E. Vance
         Supervisory Management and Program Analyst

From:    Jeffrey S. Compton
         Deputy Chief Information Officer   *signature: Shane Compton*

Subject:   Proposed Removal

This is to advise you of my proposal to remove you from your position as
Supervisory Management and Program Analyst, GS-0399-14, Office of the Chief
Information Officer, National Park Service (NPS) and the Federal service for
misuse of a government-issued charge card. This action, if sustained, will not
occur earlier than thirty (30) calendar days from the date you receive this notice
and is being taken for such cause as will promote the efficiency of the service.
This proposal is in accordance with Title 5, Code of Federal Regulations Part
752B and Part 370 Departmental Manual Chapter 752. The misconduct and
specifications supporting this proposed removal, as well as other considerations
in proposing this action, are as follows:

## Background

You have been employed as a Supervisory Management and Program Analyst,
GS-0399-14, and have served in the role as Chief, Office of Business and
Finance, for the Office of the Chief Information Officer (OCIO) since December
14, 2003. You served as the principal business and financial manager for the
OCIO and provided budgetary support and advisory services to all NPS program
areas in Washington, DC and 391 park sites.

Between January 2004 and April 2007, you served as the Agency Organizational
Point of Contact (A/OPC) responsible for the government charge card program
for OCIO. You had oversight of all OICO expenditures and were responsible for
ensuring that funds were appropriately spent, and that OCIO employees were in
compliance with government regulations and policies regarding use of
government-issued charge cards. You also served as the Point of Contact to the



07/29/2008    75881 @002

Bank of America if there were any problems with OCIO employees being delinquent on their government-issued charge card accounts.

You were initially issued a government-issued charge card on July 15, 2000. As a government-issued charge card holder, you agreed to be bound by the terms and conditions of the charge card agreement, which included not using the charge card for personal expenditures and providing receipts for all expenditures. The agreement stated that all payments for individually billed charges are due by the due date specified on your billing statement.

On April 19, 2004, you completed the Department of the Interior's on-line computer training for using the government-issued charge card for travel and purchases, which informed you that this card could not be used for personal expenditures. The computer training also informed you that charge card misuse could result in suspension or cancellation of your account and disciplinary action against you, up to and including removal. You received a certificate on that date that certified that you completed this training. On January 5, 2006 and again on January 30, 2008, you completed the Department of the Interior's on-line computer training for government-issued charge card Approving Officials.

In January 2007, an audit conducted by the Accounting Operations Center revealed possible misuse of your government-charge card. As a result of these findings, you were relieved of your responsibility for the charge card program in April 2007. The Office of Inspector General (OIG) opened an investigation into these allegations on June 29, 2007. OIG concluded that you had no supporting documentation for multiple charges on your government issued card, that you appeared to have used your government-issued charge card for personal use, and that you had been past-due on your charge card account 36 times. Moreover, the investigation revealed that you had exceeded the allotted minutes on your government-issued cell phone, costing the government over $2600.

The findings of the OIG investigation were presented to the Department of Justice (DOJ), regarding the theft of official Department of Interior funds, in violation of 18 United States Code 641. After a review of the case, DOJ decided to decline prosecution pending administrative action by the government.

**Charge:** **Misuse of a government-issued charge card**

> **Specification 1:** On July 17, 2001, there was a charge on your government-issued charge card for Talkeetna Roadhouse in the amount of $9.85. OIG was unable to find a travel voucher or receipt for that time period, and you were not able to produce any supporting authorizing documentation for the charge.

**Specification 2:** On July 19, 2001, there was a charge on your government-issued charge card for Denali Manor Bed and Breakfast in the amount of $215.57. OIG was unable to find a travel voucher or receipt for that time period and you were not able to produce any supporting authorizing documentation for the charge.

**Specification 3:** On March 27, 2002, there was a charge on your government-issued charge card for Chevron in Cantwell, Alaska in the amount of $27.01. OIG was unable to find a travel voucher or receipt for that time period and you were not able to produce any supporting authorizing documentation for the charge.

**Specification 4:** On July 7, 2002, while you were on government travel to Stone Mountain, Georgia, there was a charge for the Hampton Inn in the amount of $94.08 on the same night there was a charge for the Hilton Airport in the amount of $96.99. You were not able to provide an explanation for the secondary charge or any supporting authorizing documentation for the charge.

**Specification 5:** On June 23, 2003, there was a charge on your government-issued charge card for Aramark Sky and 6, in Luray, Virginia in the amount of $110.00. OIG was unable to find a travel voucher or receipt for that time period and you were not able to produce any supporting authorizing documentation for the charge.

**Specification 6:** On July 28, 2003, there was a charge on your government-issued charge card for personal use of a rental car in Baton Rouge, Louisiana., in the amount of $67.98. You later had to reimburse the government for this amount because it was not an authorized charge on your government-issued charge card.

**Specification 7:** On August 11, 2003, there was a charge on your government-issued charge card for personal use of a rental car in Washington, D.C., in the amount of $115.89. You later had to reimburse the government for this amount because it was not an authorized charge on your government-issued charge card.

**Specification 8:** On September 21, 2003, there was a charge on your government-issued charge card for personal use of a rental car in Baton Rouge, Louisiana, in the amount of $52.76. You later had to reimburse the government for this amount because it was not an authorized charge on your government-issued charge card.

**Specification 9:** On March 29, 2004, there was a charge on your government-issued charge card for Texaco in Fort Washington, Maryland, near your home, in the amount of $17.00. This was not an authorized

charge. You were not able to produce any supporting authorizing documentation for the charge.

**Specification 10:** On April 2, 2004, there was a charge on your government-issued charge card for Sunoco in Ocean City, Maryland, in the amount of $24.00. This was not an authorized charge. You were not able to produce any supporting authorizing documentation for the charge.

**Specification 11:** On July 4, 2004, there was a charge on your government-issued charge card for Safeway in Fort Washington, Maryland, near your home, in the amount of $51.25. This was not an authorized charge. You were not able to produce any supporting authorizing documentation for the charge.

**Specification 12:** On September 19, 2004, there was a charge on your government-issued charge card for a Texaco station in Fort Washington, Maryland, near your home, in the amount of $31.00. This was not an authorized charge. OIG was unable to find a travel voucher or receipt for that time period and you were not able to produce any supporting authorizing documentation for the charge.

**Specification 13:** On March 24, 2005, there was a charge on your government-issued charge card for Red Star Restaurant in Largo, Maryland in the amount of $77.75. This was not an authorized charge. You were not able to produce any supporting documentation for the charge.

**Specification 14:** On August 5, 2005, there was a charge on your government-issued charge card for CITGO in Tampa, Florida in the amount of $29.00. At the time, you were on government travel in Orlando, Florida, over 80 miles away. This was not an authorized charge. You were not able to produce any supporting authorizing documentation for the charge.

**Specification 15:** On August 17, 2005, there was a charge on your government-issued charge card for Barnes and Noble in Washington, DC in the amount of $67.21. This was not an authorized charge. You were not able to produce any supporting authorizing documentation for the charge.

**Specification 16:** On August 19, 2005, there was a charge on your government-issued charge card for Safeway in Fort Washington, Maryland, near your home, in the amount of $32.84. This was not an authorized charge. You were not able to produce any supporting authorizing documentation for the charge.

**Specification 17:** On November 9, 2005, there was a charge on your government-issued charge card for Sunoco in Cherry Hill, New Jersey in the amount of $50.00. OIG was unable to find a travel voucher or receipt for that time period and you were not able to produce any supporting authorizing documentation for the charge.

**Specification 18:** On March 24, 2006, there was a charge on your government-issued charge card for four (4) days of personal use of a rental car in New Orleans, Louisiana, in the amount of $169.50. You later had to reimburse the government for this amount because it was not an authorized charge on your government-issued charge card.

**Specification 19:** On May 22, 2006, there was a charge on your government-issued charge card for Pride of America gas station in Fort Washington, MD, near your home, in the amount of $45.00. The same day, you began travel for a conference in Baltimore, Maryland, and claimed reimbursement for personal miles on your travel voucher. You were not entitled to receive double reimbursement for your travel. You told OIG that you had repaid the charge to the government. However, AOC records show that you did not repay that amount.

**Specification 20:** On November 24, 2006, there was a charge on your government-issued charge card for Office Depot in Baton Rouge, Louisiana, in the amount of $71.99. You were on personal travel and this was not an authorized charge. You were not able to produce any supporting authorizing documentation for the charge.

**Specification 21:** On November 28, 2006, there was a charge on your government-issued charge card for Best Western in Baton Rouge, Louisiana in the amount of $178.00. You were on personal travel and this was not an authorized charge. You were not able to produce any supporting authorizing documentation for the charge.

**Specification 22:** On December 3, 2006, there was a charge on your government-issued charge card for Hertz Rent a Car in Baton Rouge, Louisiana in the amount of $462.99. You were on personal travel at the time. You later had to reimburse the government for this amount because it was not an authorized charge on your government-issued charge card.

The record shows that, since 2001, you repeatedly used your government-issued charge card for unauthorized transactions for your personal use and that you failed to provide the required documentation to support the charges on your card. Your use of the charge card was, therefore, improper and constitutes misuse.

As the A/OPC for OCIO, you were responsible for the government charge card program and for ensuring employees did not misuse their government-issued

charge card. Despite your responsibility to ensure compliance with charge card policies and regulations, you repeatedly misused your own government-issued charge card. You continued to misuse the card in derogation of your responsibilities as A/OPC for OCIO, even after having to reimburse the government for your improper use of the card. I believe that this charge alone supports the penalty of removal.

## Penalty Determination

In arriving at my decision to propose your removal from your position of Supervisory Management and Program Analyst, GS-0399-14, Office of the Chief Information Officer, National Park Service and from federal service, I have considered the following as they relate to the seriousness of the misconduct set forth above.

In proposing this penalty, I have considered the record as well as the factors presented by the Merit Systems Protection Board in Douglas vs. Veterans' Affairs Administration, 5 M.S.P.R. 280 (1981). These factors are as follows:

(1) The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical, or inadvertent, or was committed maliciously for gain, or was frequently repeated.

Your misconduct goes to the very heart of your position as A/OPC. You served as the A/OPC with oversight over the government charge card program for OCIO. This required you to ensure cardholders complied with charge card regulations and policies and did not engage in any misuse of the charge card. You were also responsible for ensuring that employees were not delinquent on their payments and taking prompt and appropriate corrective and/or disciplinary action against cardholders in any instance of delinquency or misuse. Your conduct was expected to be above reproach in regard to the policy and procedures governing the use of the government-issued charge card. However, you repeatedly violated the very policies that you were expected to enforce by using your government charge card for personal use, failing to provide required receipts. You continued to engage in misuse of your card even after being told you needed to reimburse the government for certain charges, which indicates that your misuse was intentional. Your misconduct is a serious breach of the trust placed in you and your responsibilities overseeing the charge card program. I consider this to be an aggravating factor in my determination of the penalty.

(2) The employee's past work record, including length of service, performance on the job, ability to get along with the follow workers and dependability

You have worked for the National Park Service for almost eight (8) years with satisfactory performance. However, your work performance and years of government service are outweighed by your serious and repeated misconduct.

(3) Past Disciplinary Record

You have no prior disciplinary record. However, I believe that the seriousness of the charges and the fact that you repeatedly and intentionally violated the guidelines of the government-issued charge card program for which you had direct responsibility to enforce outweigh this factor.

(4) The effect of the offense upon your ability to perform at a satisfactory level and its effect upon the supervisor's confidence in the employee's ability to perform assigned duties

You occupy a position that requires you to be trustworthy and honest. Your flagrant and repeated misuse of your government-issued charge card, when you were responsible for overseeing compliance with charge card policies, has caused me to lose all trust and confidence in your ability to satisfactorily perform your assigned job responsibilities. I consider this to be an aggravating factor in my determination of the penalty.

(5) The consistency of the penalty with those imposed upon other employees for the same or similar offenses

There are no similarly situated employees within the Office of the Chief Information Officer who have committed misconduct such as yours.

(6) The consistency of the penalty with any applicable agency table of penalties

In the Department's Table of Penalties, the Department's suggested penalty for misuse of a government-issued charge card ranges from a written reprimand to a 30-day suspension for the First Offense. The Table does not mandate the use of specific penalties; supervisors retain authority to set penalties they deem appropriate, based on the particular circumstances and specifications of the offense. I believe that the circumstances of this case justify the penalty of removal, because you repeatedly and intentionally violated the regulations and policies that you were responsible for enforcing.

(7) The clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question.

I have considered the clarity with which you were on notice of the rules that govern your misconduct. You are responsible for oversight of the charge card program within OCIO, and in ensuring compliance with charge card policies. On

April 19, 2004, you completed a DOI Cardholder's Training Course concerning the use of the government-issued charge card for both purchase and travel. You received your initial Department of the Interior's on-line computer training for Approving Officials on January 5, 2006 and refresher training on January 30, 2008. When you received your government-issued charge card, a statement titled "Agreement between the Department of the Interior Employee and Bank of America, N.A. (USA)" was included with that card. This document explicitly advised you that use of the charge card is limited to "official purchase, travel, fleet and official related charges in accordance with your Agency/Organization policy" and may not be used for "personal, family or household purposes." The fact that in your position you had responsibility to ensure other employees were in compliance and did not misuse their government-issued charge card shows that you were aware of or should have known that your actions were in violation of the very rules you were tasked to enforce. I consider this to be an aggravating factor in my determination of the penalty.

(8) Potential for the employee's rehabilitation

The fact that you repeatedly violated policies you were responsible for enforcing leads me to conclude that you would not be a good candidate for rehabilitation.

(9) Mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter

I am not aware of any mitigating circumstances.

(10) The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

I have concluded that a lesser penalty, such as a suspension, would not be sufficient to deal with your egregious misconduct. I believe that proposing your removal from the Service is the only action that is appropriate and that will ensure the efficiency of operation that is essential to this program and to the Service.

**Employee Rights:**

You have the following rights in connection with this proposed action:

a) To reply: You may reply to this notice orally or in writing, or you may utilize both methods. Written or oral replies should be directed to the deciding official, Jospeh L. Curran, Chief Information Officer, National Park Service. You have fifteen (15) calendar days from the date you receive this notice to reply.

- Written replies should be postmarked within fifteen (15) calendar days of your receipt and should be mailed to:

> Joseph L. Curran
> Chief Information Officer
> National Park Service
> 1201 Eye Street, N.W.
> Washington, D.C. 20005

- To schedule an oral reply to this proposal with Mr. Curran, prior to the expiration of your fifteen (15) days, you may telephone him at (202) 354-1810 within seven (7) days from the date you receive this notice. You should identify the purpose of your call and request an appointment to present your reply.

NOTE: When making either a written and/or oral reply, you may submit affidavits and other documentary evidence to support your reply. Any reply you make will be fully considered in arriving at a final decision.

b) <u>Extension in Reply Time</u>: If you require an extension of the fifteen-calendar day time limit for your reply, you must submit a written request to Mr. Curran at the address identified above. Your request must state the specific reason(s) why you are asking for an extension and identify the specific period. Mr. Curran will advise you whether your request for an extension is granted and for what period that extension is granted. Any extension in this time limit must be expressly granted by Mr. Curran.

c) <u>To be Represented</u>: You are entitled to have an attorney or other representative in this matter. You must provide the name, title and address of this person to Mr. Curran at the address provided above. If it is determined that the person you selected to represent you will result in a conflict of interest or position, or a conflict with the priority needs of the National Park Service, or give rise to unreasonable costs to the government-issued, that person may be disqualified from representing you;

d) <u>To review material</u>: You and/or your representative may review and obtain a copy of the materials relied upon to support the reasons for this proposed removal by contacting Larry Hudson, Human Resources Specialist, at (202) 354-1910.

e) <u>Official Time Use</u>: You will remain in a duty status throughout this notice period. You, or your representative, if that person is an employee of the National Park Service, may use a reasonable amount of official time (up to eight (8) hours), subject to supervisory approval, to prepare a reply to this notice. To use official time for this purpose, you or, if applicable, your

representative must submit to the responsible immediate supervisor, in advance of the time requested, a statement in support of your request for official time and the estimated time required.

f) <u>Use of Government-issued Equipment</u>: You may use government-issued office equipment on a limited basis to prepare your reply to this notice consistent with the Department of the Interior's June 14, 2000, memorandum entitled "Policies on Limited Use of Government-issued Equipment and Telephone Use." You may obtain a copy of this policy on the world-wide-web at <u>www.doi.gov/ethics</u>, under "Internet, Acceptable Use Policy." Please note that all personal use of government-issued equipment must be during non-duty time, unless you are using the equipment during the specified official time granted for preparing your reply.

You will remain in duty status during this notice period. As soon as possible after your reply is received, or, if you do not reply after the expiration of the fifteen (15) calendar day time limit for your reply, Mr. Curran will issue a written decision to you. Full consideration will be given to any reply you make. If you have designated a representative, a copy of the decision will be sent to that person.

If you believe you are experiencing personal problems that may contribute to your misconduct, I encourage you to avail yourself of the services of our Employee Assistance Program (EAP). EAP services are completely confidential and available 24-hours a day to all Departmental employees by calling 1-800-222-0364.

If you have any questions about this notice or your rights in connection with it, you may contact Larry Hudson, Human Resources Specialist, at (202) 354-1910.

Receipt Acknowledgement:

Please sign and date the enclosed copy of this memorandum to acknowledge that you received it. Your signature does not mean that you agree or disagree with this notice and your signature will not forfeit any right to which you are entitled. Additionally, your failure to sign will not void the contents of this memorandum.

Please return a copy of this signed notice. If you prefer, you may return a copy of this notice showing your original signature to Larry Hudson located at 1201 Eye Street NW, 12th floor, Room 1233.

1. I acknowledge receipt of this memorandum:


_____        _____
Reginald E. Vance                       Date

<u>Or</u>

2. Employee chose not to sign as receiving the memorandum. I certify that the memorandum was given or mailed to the employee on this date:


_____        _____4-21-08_____
Jeffrey S. Compton                      Date

May 5, 2008

Joseph L. Curran                                    BY HAND
Chief Information Officer
National Park Service
1201 Eye Street, N.W.
Washington, D.C. 20005                                      •

     Re:   Memorandum re Proposed Removal dated April 21, 2008
            **Notice of Representation and Request for Extension of Time**

Dear Mr. Curran:

    I am writing to advise that I am being represented by Russell J. Gaspar and
William F. Savarino of the law firm Cohen Mohr, LLP, Suite 504, 1055 Thomas
Jefferson St., N.W., Washington, D.C. 20007, (202) 342-2550, in connection with the
referenced Memorandum.

    I am also writing to request a 10-day extension of the 15-day period allowed for
my written response to the Memorandum, from May 6 to May 16, 2008. Given the
number of specifications in the memo that require a factual response, my need to obtain
affidavits and other documentary evidence from individuals who are not in the
Washington, D.C. area to support my response, and my need for an adequate opportunity
to seek assistance from counsel regarding the factual and legal issues associated with the
proposed action, I will not be able to complete my reply within the 15-day period.

    I would appreciate it if you would communicate your decision concerning this
request to me as soon as possible. Thank you.

                    Very truly yours,

                    Reginald E. Vance

Encl.





## United States Department of the Interior

NATIONAL PARK SERVICE
1849 C Street, N.W.
Washington, D.C. 20240

IN REPLY REFER TO:

P36(2653)

MAY - 6 2008

William F. Savarino
Cohen Mohr, LLP
1055 Thomas Jefferson St., N.W., Suite 504
Washington, D.C. 20005

Dear Mr. Savarino:

This is to acknowledge the May 5, 2008, letter of your client, Reginald E. Vance, designating you as his representative.

Mr. Vance requested a ten day extension of the fifteen day period allowed for written response to the proposal to remove him from Federal Service. The request is granted to close of business, May 16, 2008. I will consider any written response received on or before that date in making my decision.

For further information, please contact Larry Hudson, Employee Relations Specialist, (202) 354-1910.

Sincerely,

Larry Curran
Chief Information Officer

cc: Reginald Vance



Larry Curran

07/25/2008 01:08 PM
EDT

To: Larry Hudson/WASO/NPS@NPS
cc:
Subject: Fw: R. Vance response to memorandum

\- -
Larry Curran
National Park Service
Chief Information Officer
1201 Eye Street NW
Washington, DC 20005
voice: 202.354.1810
fax:
email: larry_curran@nps.gov
----- Forwarded by Larry Curran/WASO/NPS on 07/25/2008 01:07 PM -----

Reggie Vance/WASO/NPS

05/06/2008 03:28 PM EDT

To  Larry Curran/WASO:NPS@NPS

cc

Subject  R. Vance response to memorandum

Mr. Curran,

Thank yo for taking the time to speak with me today.

I appreciate the extension of time to respond to Mr. Compton's memorandum and proposal.

As agreed, we will submit a complete package for your review no later than May 16, 2008.

Again, thanks for your consideration.

Reggie

Reginald E. Vance, Ph D.
Chief, Business and Finance Office
Office of the Chief Information Officer
202-354-2016 Office
202-641-7383 Cell
1201 Eye Street NW Mail Stop 2550
Washington, D.C. 20005



Larry Curran

07/25/2008 01:06 PM
EDT

To: Larry Hudson/WASO/NPS@NPS
cc:
Subject: Fw: R. Vance Written and Oral Reply

- -
Larry Curran
National Park Service
Chief Information Officer
1201 Eye Street NW
Washington, DC 20005
voice: 202.354.1810
fax:
email: larry_curran@nps.gov
----- Forwarded by Larry Curran/WASO/NPS on 07/25/2008 01:04 PM -----

Reggie Vance/WASO/NPS
05/16/2008 03:28 PM EDT

To   Larry Curran/WASC/NPS@NPS

cc

Subject   R. Vance Written and Oral Reply


Mr. Curran,

As directed, I submitted my written response to Larry Hudson this afternoon.

Upon your return and at your convenience, I would like to schedule an oral reply to provide any
information that may be required for further clarification.

I appreciate your consideration.

Thanks.

Reginald E. Vance, Ph.D.
Chief, Business and Finance Office
Office of the Chief Information Officer
202-354-2016 Office
202-641-7383 Cell
1201 Eye Street NW Mail Stop 2550
Washington, D.C. 20005



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANET HOWARD,<br><br>     Plaintiff,<br><br>     v.<br><br>CARLOS GUTIERREZ, Secretary,<br>U.S. Department of Commerce,[1]<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)    Civil Action No. 08-421 (PLF)<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM OPINION AND ORDER

    This matter is before the Court on *pro se* plaintiff Janet Howard's motion for a

preliminary injunction.[2] The Court heard oral argument on plaintiff's motion on April 14, 2008.

Upon consideration of Ms. Howard's motion, defendant's opposition, Ms. Howard's reply,

defendant's surreply, and the entire record in this case, the Court will deny Ms. Howard's

motion.

---

    [1]    Some of plaintiff's papers name Mr. Gutierrez as the sole defendant, while others name various Department of Commerce officials in addition to Mr. Gutierrez. As the head of an agency is the only proper defendant in a suit such as this, see 42 U.S.C. § 2000e-16(c), the Court will proceed as if Mr. Gutierrez is the lone defendant.

    [2]    The papers submitted in connection with this motion include: Plaintiff Janet Howard's Memorandum in Support of Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Pl.'s Mot."); Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Def.'s Opp."); Plaintiff's Reply Brief in Support of Motion for a Preliminary Injunction and for an Expedited Hearing ("Pl.'s Reply"); Plaintiff's Response to Order #2: Motion for a Temporary Restraining Order and Preliminary Injunction in Civil Action No. 08-421; and Defendant's Surreply in Further Opposition to Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction.


GOVERNMENT
EXHIBIT
Gut. 09
08-1283

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff has worked for the United States Department of Commerce for over twenty years. See Def.'s Opp. at 3. She is currently employed as an Export Compliance Specialist. Id. at 3-4. On November 13, 2007, her supervisor, Todd Willis, placed her on a Performance Improvement Plan ("PIP"). Id. at 5. The stated purpose of the PIP was to "allow [Ms. Howard] an opportunity to raise [her] performance to [a] satisfactory level." Pl.'s Reply, Ex. 3, Letter from Todd Willis to Janet Howard Regarding PIP at 1 (Nov. 13, 2007). In his letter setting forth the PIP, Mr. Willis informed Ms. Howard that failure to meet the requirements of the PIP could have adverse consequences including demotion or termination. See id. at 6. On February 5, 2008, Ms. Howard filed a formal Equal Employment Opportunity complaint claiming that the November 2007 PIP was discriminatory and retaliatory. See Def.'s Opp. at 6.

In a letter dated February 27, 2008, Mr. Willis informed Ms. Howard that, based on her failure to meet the requirements of the PIP, he was proposing to terminate her employment. See Pl.'s Reply, Ex. 4, Letter from Todd Willis to Janet Howard Regarding Notice of Proposed Removal at 1 (Feb. 27, 2008). That letter also stated that the proposed removal would become effective no earlier than 30 days from Ms. Howard's receipt of the letter. See id.[3]

On March 6, 2008, Ms. Howard amended her February 5, 2008 administrative complaint, so that it encompassed not only the November 2007 PIP but also the notice of proposed removal. See Def.'s Opp. at 6. On March 11, 2008, Ms. Howard initiated the instant suit and filed a motion for a temporary restraining order and preliminary injunction (which this

---

[3]    Defendant subsequently agreed to refrain from effectuating any sanction until April 18, 2008, in order to permit this Court to deal with Ms. Howard's preliminary injunction motion in an orderly fashion.

2

Court is treating as a motion for a preliminary injunction). In that motion, Ms. Howard asks this

Court to compel defendant "to cease and desist any attempts to remove her from her government

job." Pl.'s Mot. at 4. She argues that defendant's explanation for the notice of proposed removal

– deficient performance – is pretextual, and that defendant in fact seeks to terminate her in

retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. §§ 2000e et seq. Id. at 1.[4] She further argues that she is entitled to

the extraordinary remedy she seeks because, absent such relief, she faces the possibility of

termination and "[i]rreparable harm [including] loss of revenue . . . loss of benefits (medical and

life), prescription drug[s], reduced retirement benefits, loss of home, loss of car and enjoyment of

life, mental and physical anguish, [and] personal embarrassment." Id. at 3-4.


## II. STANDARD

In deciding whether to grant emergency injunctive relief, the Court must consider

(1) whether there is a substantial likelihood that plaintiff will succeed on the merits of her claim,

(2) whether plaintiff will suffer irreparable injury in the absence of an injunction, (3) the harm to

defendants or other interested parties (balance of harms), and (4) whether an injunction would be

in the public interest or at least not be adverse to the public interest. See Belbacha v. Bush, No.

07-5258, 2008 WL 680637, at *5 (D.C. Cir. 2008); Ellipso, Inc. v. Mann, 480 F.3d 1153, 1157

(D.C. Cir. 2007); Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d

---

[4]     In addition to this case, Ms. Howard is a plaintiff in two other civil cases in which
defendant is accused of unlawful retaliation and/or discrimination: Howard v. Gutierrez, Civil
Action No. 04-756, before the undersigned, and Howard v. Gutierrez, Civil Action No. 05-1968,
before Judge Bates. Ms. Howard has also filed over twenty administrative complaints of
retaliation and discrimination against her employer since 1995. See Howard v. Gutierrez, Civil
Action No. 04-756, Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 34.

3

841, 843 (D.C. Cir. 1977).

Plaintiffs are not required to prevail on each of these factors. Rather, the factors must be viewed as a continuum, with more of one factor compensating for less of another. "A court must balance these factors, and '[i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak.'" Ellipso, Inc. v. Mann, 480 F.3d at 1157 (quoting CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995)). An injunction may be justified "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d at 747. Conversely, when the other three factors strongly favor interim relief, a court may grant injunctive relief when the moving party has merely made out a "substantial" case on the merits. The necessary level or degree of likelihood of success that must be shown will vary according to the Court's assessment of the other factors. See Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d at 843-45.

### III. DISCUSSION

#### A. Likelihood of Success

Ms. Howard cannot demonstrate that she is likely to succeed on the merits because she has failed to exhaust her administrative remedies.

Federal employees must exhaust their administrative remedies before filing suit under Title VII. See 42 U.S.C. § 2000e-16(c); Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997). As noted above, on March 6, 2008, Ms. Howard amended a previous EEO complaint

4

to include a claim that the notice of proposed removal at issue in this case is discriminatory and/or retaliatory.  All agree that this administrative complaint "is in the initial stages of the administrative process," Def.'s Opp. at 6 – that is, that Ms. Howard has not exhausted her administrative remedies with respect to the notice of proposed removal.[5]

Ms. Howard's undisputed failure to exhaust her administrative remedies makes it impossible for this Court to conclude that she is likely to succeed on the merits because premature suits like this one are routinely dismissed.  See e.g., Jones v. Ashcroft, 321 F. Supp. 2d 1, 10 (D.D.C. 2004) ("Ordinarily, individuals who fail to comply with these administrative deadlines will be denied a judicial audience."); Howard v. Evans, 193 F. Supp. 2d 221, 228 (D.D.C. 2002) (same).  Thus, Ms. Howard cannot satisfy the first part of the four-part test articulated above.

### B.  Irreparable Harm

Ms. Howard maintains that she will be irreparably harmed if defendant terminates her because she will lose her salary – and with it her benefits (including, most importantly to her, her medical benefits and the ability to obtain needed prescription drugs), her home, her car, and her dignity.  See Pl.'s Mot. at 3-4.  These are real injuries, but they are not *irreparable* injuries.

As Judge Urbina has observed, "given the court's equitable powers [in an employment discrimination case] to remedy for loss in employment through, for example, back pay and time in service credit, cases are legion holding that loss of employment does not constitute irreparable injury."  Farris v. Rice, 453 F. Supp. 2d 76, 79 (D.D.C. 2006); see also

---

[5]    Ms. Howard conceded this point at oral argument.

Sampson v. Murray, 415 U.S. 61, 90 (1974) (temporary loss of income is not irreparable injury).

In short, because "adequate compensatory or other corrective relief will be available at a later

date" should Ms. Howard ultimately prevail, her injuries are not sufficiently "irreparable" to

support the grant of a preliminary injunction. Nichols v. Agency for Int'l Dev., 18 F. Supp. 2d 1,

4 (D.D.C. 1998).[6] Ms. Howard therefore cannot satisfy the second part of the four-part test

articulated above.

Because Ms. Howard cannot demonstrate that she is likely to succeed on the

merits or that she will be irreparably injured, the Court need not engage in any further analysis.

See Howard v. Evans, 193 F. Supp. 2d at 228 (movant must make some showing on all four

factors for preliminary injunction to issue). In any event, the final two factors – the balance of

harms and the public interest – favor defendant, because "[i]f the bare allegations of irreparable

injury that [Ms. Howard] has marshaled could justify interim injunctive relief, the federal

government would be paralyzed from taking necessary personnel action every time an employee

believed that his or her termination" was discriminatory or retaliatory. Nichols v. Agency for

Int'l Dev., 18 F. Supp. 2d at 6. Accordingly, it is hereby

---

[6]    Both Ms. Howard and defendant assume that movants seeking to preliminarily
enjoin the federal government from taking employment action face a higher hurdle on the
"irreparable injury" prong than other movants. See Pl.'s Reply at 10; Def.'s Opp at 10. It is not
entirely clear that this rule applies in Title VII cases. See Jordan v. Evans, 355 F. Supp. 2d 72,
77 (D.D.C. 2004). The Court need not resolve this issue, however, because plaintiff fails to meet
the traditional standard for irreparable injury. See Wagner v. Taylor, 836 F.2d 566, 576 n.66
(D.C. Cir. 1987).

ORDERED that plaintiff's motion for a preliminary injunction [3] is DENIED.

This is a final appealable order. See 28 U.S.C. § 1292(a)(1).

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: April 16, 2008

7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REGINALD VANCE                          )
                                        )
                    Plaintiff,          )
                                        )
        v.                              ) Civ. No. 08- 1283 (PLF)
                                        )
DIRK KEMPTHORNE, SECRETARY              )
DEPARTMENT OF THE INTERIOR              )
                                        )
                    Defendant.          )
_____)

ORDER

Upon consideration of Plaintiff's Motion for a Temporary Restraining Order and for a

Preliminary Injunction, Defendant's Opposition thereto, and the entire record in this matter, it is

hereby

ORDERED that Plaintiff's Motion is DENIED.


Date:                           _____
                                UNITED STATES DISTRICT COURT